UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| COLLEEN R. G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:19-CV-00074-JD-MGG |
| | ) |
| ANDREW SAUL, | ) |
| Acting Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Colleen R. G. ("Ms. G.") seeks judicial review of the Social Security Commissioner's decision denying her application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI, as allowed under 42 U.S.C. § 405(g). On June 14, 2019, this matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b), Fed. R. Civ. P. 72(b), and N.D. Ind. L.R. 72-1(b). Ms. G.'s complaint became ripe on September 26, 2019, without any reply being filed. For the reasons indicated below, the undersigned recommends remand of the Commissioner's decision.

**I.   OVERVIEW OF THE CASE**

Ms. G. alleges an onset of disability on January 1, 2014, based on Type 2 diabetes mellitus, obesity, left shoulder tendonitis, borderline intellectual functioning, and

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the Plaintiff by first name and last initial only.

specific learning disorder with impairment in math, reading, and written expression. [DE 21 at 9]. Although Ms. G. completed the twelfth grade, she needed services in the resource program to be successful and generally took "resource" classes rather than regular classes. [*Id.* at 7]. Ms. G. worked for nearly thirty years in several industries, including experience as a stacker and molded parts inspector. [*Id.*] Most recently, she worked for Kraft in 2014, and for Tower Ribbon in 2014-15. [*Id.*]

Ms. G.'s submitted an application for DIB and SSI on May 29, 2015, which alleged an onset of disability beginning January 1, 2014. [DE 12 at 22]. The application was denied initially on September 14, 2015, and upon reconsideration on April 4, 2016. [*Id.*] Following a hearing on September 11, 2017, the Administrative Law Judge ("ALJ") issued a decision on March 13, 2018, which affirmed the Social Security Administration's ("SSA") denial of benefits. [*Id.* at 22, 35]. The ALJ found that Ms. G. has severe impairments that significantly limit her ability to perform basic work activities as required by SSR 85-28. [*Id.* at 25-26]. However, the ALJ determined that none of Ms. G.'s impairments (alone or in combination) met or equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, App. 1. [*Id.* at 26-27]. Moreover, the ALJ found that Ms. G. has the residual functional capacity ("RFC") to perform light work as defined by the regulations with some limitations. [*Id.* at 28]. Specifically, the ALJ gave weight to the opinion from the State agency that Ms. G. is capable of "completing unskilled tasks within a low stress work environment." [*Id.* at 32]. While the ALJ found that Ms. G. was unable to perform any past relevant work [*Id.* at 33], he determined that there are jobs that exist in significant numbers in the national economy

that Ms. G. can perform. [*Id.*] Based on the testimony of the vocational expert ("VE"), the ALJ concluded that Ms. G. would have the ability to meet the requirements for employment as a routing clerk, retail marker, and ticket taker. [*Id.* at 34]. Based upon these findings, the ALJ denied Ms. G.'s claims for benefits.

## II.   DISABILITY STANDARD

In order to qualify for DIB and SSI, a claimant must be "disabled" under the Social Security Act ("Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for disability benefits under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. §§ 404.1520; 416.920[2]; *see also Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

---

[2] DIB requirements are found at 20 C.F.R. § 404, while SSI requirements are found at 20 C.F.R. § 416. They are essentially identical. For efficiency's sake, the undersigned will only reference the DIB requirements in this Report and Recommendation.

### III. STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The Court must give deference to the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened when the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his

4

conclusions, the ALJ must, at least, provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question under judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th. Cir. 2001).

## IV. ANALYSIS

### A. Issues for Review

In challenging the ALJ's decision, Ms. G. alleges the ALJ committed four separate errors in his decision. Ms. G. alleges that: (1) the ALJ failed to fully account for functional limitations arising from all of her medically determinable impairments (severe and non-severe), especially her limitations in concentration, persistence, and pace ("CPP"), in determining her RFC; (2) the ALJ erred in his subjective symptom analysis by overemphasizing Ms. G.'s ability to handle daily activities; (3) the ALJ erred by attacking the credibility of Ms. G. based on noncompliance with medication without fully considering alternate explanations; and (4) the ALJ improperly weighed the opinion of its examining psychologist, which indicated that Ms. G. would have trouble

5

remembering what she was asked to do on a job, being able to concentrate on a job, and being able to stay on task. Each argument is addressed in turn.

### B. Mental RFC—CPP Limitations

Before crafting a claimant's RFC, an ALJ is required to determine whether the claimant's medical impairments are "severe" at Step Two of the disability analysis. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). An impairment is not severe if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work". SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). Here, the ALJ determined that Ms. G. had the following severe impairments: (1) type 2 diabetes mellitus; (2) obesity; (3) tendinitis in her left shoulder; (4) specific learning disorder with impairment in math, reading, and written expression; and (5) borderline intellectual functioning. [DE 12 at 25].

If an ALJ determines that any of a claimant's alleged impairments are severe, the ALJ proceeds to the Step Three Listing analysis to determine if the claimant is presumptively disabled based on the severity of her impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Here, as part of his Step Three listing analysis, the ALJ concluded that Ms. G. has moderate limitations in concentration, persistence, and pace. The ALJ asserted that Ms. G.'s daily activities, stress management, attentiveness, and conduct during the hearing supported his finding of moderate CPP limitations. [DE 12 at 27].

6

Subsequently, the ALJ defined Ms. G.'s RFC as being able to perform light work with the following limitations:

> [T]he claimant has the residual functional capacity to perform light work as defined in [citations omitted] except can occasionally reach overhead with the left upper extremity (the non-dominant upper extremity); occasionally climb ramps and stairs and balance; never climb ladders, ropes, or scaffolds; must avoid unprotected heights; can occasionally operate a motor vehicle; and is limited to performing simple, routine and repetitive tasks.

[*Id.* at 28]. The ALJ restated, verbatim, the limitations from the RFC in his hypothetical to the VE at the hearing. [*Id.* at 74-75].

A claimant's RFC is the limit of activity in which she can engage in a work setting despite the physical and mental limitations that arise from her impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). Ms. G. argues that the ALJ's mental RFC determination is not supported by substantial evidence. Specifically, Ms. G. contends that the RFC, and identical hypothetical to the VE, do not include any CPP limitations, which contradicts the ALJ's finding of "moderate" CPP limitations at Step Three.

An ALJ must evaluate all relevant evidence when determining a claimant's RFC, including evidence of non-severe impairments. 20 C.F.R. § 404.1545(a). This evidence includes a claimant's deficiencies in concentration, persistence, or pace. *O'Connor– Spinner*, 627 F.3d at 619. A claimant's mental ability is relevant to the RFC analysis, because "[a] limited ability to carry out certain mental activities . . . may reduce your ability to do past work and other work." 20 C.F.R. § 404.1545(c).

The Seventh Circuit has provided that, "[a]s a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's

7

limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). While there is no "per se requirement" for an ALJ to use the specific terminology of "concentration, persistence, and pace" in a hypothetical, a court "will not assume that the VE is apprised of such limitations . . . ." *Id.* When the hypothetical question "does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004). In most cases, an ALJ "should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 620–21.

As shown above, the ALJ crafted an RFC—and an identical hypothetical to the VE—that did not incorporate the words "concentration, persistence, and pace." [*See* DE 12 at 28, 75]. The Seventh Circuit permitted "an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 619. However, in order to determine whether an RFC excludes the tasks that someone with the claimant's limitations would be unable to perform, one must first know the claimant's limitations.

The ALJ neither explicitly defined Ms. G.'s specific CPP limitations, outlined the evidence such that any inference he may have made was clear, nor articulated a rationale connecting the evidence to his RFC determination. Instead, the ALJ relied on

8

his recitation of incomplete evidence regarding Ms. G's CPP limitations. Without any further explanation, this Court cannot trace the ALJ's logic from the conflicting evidence cited to the physical limitations included in the RFC. For instance, the VE noted that Ms. G. had no transferable skills from her prior employment. [*Id.* at 77]. Further, the ALJ asked the VE about employers' tolerance for absences, and the VE opined that an individual who misses more than one day per month would not be able to maintain competitive employment. [*Id.* at 76]. Yet, ALJ did not analyze how Ms. G.'s medical conditions and history of absences would impact his RFC analysis. The ALJ's lack of analysis of Ms. G.'s transferrable skills as well as her likelihood of medical absences undermine the ALJ's RFC analysis by leaving a fissure in the logical bridge. While this lack of analysis does not, by itself, produce a conclusion that the ALJ's RFC determination is incorrect, it does prevent this Court from adequately reviewing the ALJ's RFC analysis.

  Furthermore, the Seventh Circuit has refused to acknowledge that generic limitations, such as those requiring "routine work," account for a claimant's moderate CPP limitations. *See Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018). Here, the ALJ used boilerplate language to limit Ms. G. to "simple, routine, and repetitive tasks." [DE 12 at 28]. While such generic language may be permissible in some situations, the ALJ has not created the necessary logical bridge to allow this Court to track the cited evidence to the RFC limitations and, therefore, ensure that these largely generic limitations fully account for Ms. G.'s CPP limitations in the mental RFC. *Yurt*, 758 F.3d at 858–59.

C.     **Subjective Symptom Analysis**[3]

Once an ALJ decides that the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which she is limited in performing work-related activities. 20 C.F.R. § 404.1529(b)–(c). In doing so, the ALJ must consider objective medical evidence and "other evidence," which includes statements made by the individual, her daily activities, medications, and other factors concerning functional limitations. *Id.* § 404.1529(c)(2)–(3). This Court will not overturn an ALJ's subjective symptoms determination unless it is "patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012).

In determining the extent to which the claimant's symptoms affect her capacity to perform basic work activities, the ALJ must consider whether the subjective symptoms "can reasonably be accepted as consistent with the objective medial evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). The ALJ must "explain which of an individual's symptoms [he] found consistent or inconsistent with the evidence." SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017). The ALJ concludes by factoring this symptom analysis into the RFC determination. *See* 20 C.F.R. § 404.1545(a)(3).

---

[3] Per SSR 16-3p, the term "credibility" has been removed from sub-regulatory policies, and the term "subjective symptoms" is used to clarify that the subjective symptom evaluation is not an examination of an individual's character. Adjudicators will apply this ruling for determinations and decisions made on or after March 28, 2016.

### 1. Daily Activities

The ALJ discounted Ms. G.'s testimony about the effects of her impairments in part based on her claims of being able to perform daily activities. [*Id.* at 27-28]. Ms. G. contends that the ALJ erred by overemphasizing Ms. G.'s ability to manage daily activities. In other words, Ms. G. asserts that the ALJ did not articulate adequately why the explanatory and qualifying testimony about Ms. G.'s completion of tasks of daily living was discounted or found to be irrelevant. Ms. G. also alleges that the ALJ failed to apply Seventh Circuit legal standards related to evaluation of a claimant's ability to perform household activities.

For instance, the Seventh Circuit has held that the ability to perform basic household chores, particularly when done with breaks, cannot be counted against an applicant. *Clifford*, 227 F.3d at 872 ("minimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity"). "[A] person's ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy*, 705 F.3d at 639; *Bjornson v. Astrue*, 671 F. 3d 640, 647 (7th Cir. 2012). An ALJ cannot disregard a claimant's limitations in performing household activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (citing *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir.2008)).

Ms. G. is a case in point. In discussing the "paragraph B" criteria as part of his Step Three listing analysis, the ALJ summarized Ms. G.'s testimony about her daily activities as follows:

> she completes tasks, worked at the same job for 27 years, and can handle money . . . does not need reminders to take medicine or to attend to personal needs/grooming . . . [s]he is able to go out alone and shops in stores . . .  [she] has not trouble with dressing, bathing, cooking, cleaning, laundry, or grocery shopping . . . [s]he can prepare meals and drive a car . . . [s]he helps her mother with some housework such as laundry, vacuuming, and yard work, prepares simple meals, takes care of pets, and takes care of her 14-year old son on weekends and in the summer . . . claimant has no problem with personal care . . . [s]he gets around by walking or driving . . . [s]he is able to count change . . .

[*Id.* at 27-28]. In the RFC analysis, the ALJ then concluded that "evidence regarding daily activities demonstrates a greater level of physical and psychological function than the claimant alleges." [*Id.* at 31]. In support, the ALJ reiterated some of the "paragraph B" evidence noting that

> the claimant prepares simple meals, performs household chores such as cleaning, laundry, vacuuming, and yard work, shops, takes care of pets, and gets around by walking and driving . . . . In addition to the aforementioned daily activities, the claimant testified that she spends time with her 16-year old son every weekend doing activities such as fishing. These activities illustrate the claimant's capacity to carry out high-level daily activities irrespective of her symptoms.

[*Id.* at 32].

Indeed, Ms. G. concedes that she is able to do many of the tasks described by the ALJ. Yet

> [t]he critical difference between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer.

*Bjornson*, 671 F.3d at 647. Ms. G. argues that the ALJ did not consider these *Bjornson* factors. She contends that the ALJ failed to acknowledge the extent of assistance that she needs to accomplish these tasks, especially with respect to concentration, persistence, or

12

pace. For instance, Ms. G. reported in her pre-hearing questionnaire that she lived with her mother and testified at the hearing that she was living with her boyfriend.

As Ms. G. suggests, the ALJ's decision did not discuss the fact that Ms. G. has assistance in performing the tasks of daily living. Further, the ALJ discounted the evidence that Ms. G. needs assistance in performing these daily tasks. Without adequate discussion or analysis, the ALJ noted that Ms. G. "has trouble following written instructions and difficulty reading . . . [and] functions in the borderline range of intellectual functioning." [*Id.* at 27]. Although inconsistent with his finding that Ms. G. was able to perform household tasks without assistance, the ALJ found that "the consultative examiner noted memory deficits . . . [and] concentration deficits." [*Id.*at 27-28]. This is consistent with the testimony of Ms. G.'s mother, who stated that, even as a child, Ms. G. would focus on one task to the exclusion of others and that when she has a list of things to do, Ms. G. would tackle the last task on the list to the exclusion of others. [*Id.* at 71-72]. Due to nature of Ms. G.'s disability, her mother testified that "we've always helped her." [*Id.* at 72].

Additionally, the ALJ noted that Ms. G. "reportedly experiences difficulty handling stress and changes in routine." [*Id.* at 28]. This statement is also consistent with the testimony of Ms. G.'s mother.  Her mother agreed that "the added pressure of going to work . . . the idea of having to get to places on time interfered with [Ms. G.'s] ability to do other routine things." [*Id.* at 71]. This interfered with Ms. G.'s ability to perform necessary tasks of daily living, including taking her blood sugar measurements. [*Id.*]. Her mother also agreed that Ms. G. had trouble concentrating on

tasks when she felt stressed. [*Id.*]. The opinion of the psychological consultative examiner, Dr. Boen, is also relevant in this context—he opined that Ms. G. would have trouble remembering what she was asked to do on a job, would have trouble being able to concentrate on the job, [and] would have trouble being able to stay on task." [*Id.* at 32]. While the ALJ gave "significant weight" to Dr. Boen's opinion, he did not explain how these substantial functional deficits correlated with his finding that Ms. G. was not disabled.

Significantly, the ALJ did not consider the difference between home and work in assessing Ms. G. abilities to meet the CPP demands of a work environment. Obviously, the CPP demands at home are radically different from those necessary at the workplace.[4] As noted by the Ms. G.'s brief, "the pace and persistence in each activity asserted [in the ALJ's decision] would seem to have massive flexibility compared to the demands of work." [DE 21 at 25].

In this context, Ms. G. argues that the ALJ's consideration of her limitations in activities of daily living is not consistent with the ALJ's conclusion that she has no more than minimal impairments such that they are not severe. Yet, the Commissioner argues that the ALJ reasonably evaluated Ms. G.'s symptoms and limitations as compared to objective medical evidence. As such, the Commissioner contends that the ALJ's decision

---

[4] A simple example is illustrative. If one mislays her reading glasses at home, she can spend as much time as necessary in locating the missing glasses. All other activities can grind to a halt while the search is commenced. Once the glasses are located – always in the last place one looks – the household can return to other tasks. Clearly, a workplace with production deadlines and wage-hour requirements cannot adopt such a casual attitude towards something as simple as mislaid eyeglasses. At work, time missed is time lost; at home, it is merely time spent.

14

finding Ms. G. overstated her symptoms, thereby discounting her credibility and the credibility of her mother, were supported with substantial evidence and cannot be considered patently wrong.  "So long as an ALJ gives specific reasons supported by the record, [the court] will not overturn [an ALJ's] credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

Despite her arguments to the contrary, Ms. G. has not demonstrated that the ALJ's consideration of her daily activities in his subjective symptom analysis was patently wrong. Ms. G. has, however, brought into question whether the ALJ ignored evidence when deciding how to assess her ability to perform activities of daily living. Such "cherry-picking," or failing to mention directly relevant or even contradictory evidence, by the ALJ is not proper.  *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *see also Huber v. Astrue*, 395 F. App'x 299, 302 (7th Cir. 2010) (citing *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984)). As such, the ALJ's apparent plucking of isolated statements from the record while ignoring other significant evidence of Ms. G.'s inability to perform simple tasks in a timely fashion, fails to create a logical bridge to the ALJ's conclusions about Ms. G.'s limits relative to her daily activities.

### 2. Noncompliance with Treatment

Ms. G. argues that the ALJ did not give sufficient weight to her symptom testimony, failed to consider her emotional unreliability based on her low intellectual functioning, and gave too much weight to her noncompliance with prescribed medication without considering other explanations. [DE 21 at 26-27].

A claimant must follow prescribed treatments to obtain benefits; though for a "good reason," a claimant may choose not to follow a prescribed treatment without losing access to benefits. 20 C.F.R. § 404.1530(a)–(b). In *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985), the claimant suffered from chronic obstructive pulmonary disease, which resulted in significant limitations that would have warranted a disability finding. Yet the ALJ denied DIB because the claimant continued to smoke in violation of the doctors' prescribed treatment. *Id.* The Seventh Circuit reversed, holding that "[e]ssential to a denial of benefits pursuant to Section 404.1530 is a finding that if the claimant followed [his] prescribed treatment [he] could return to work," and the court found no such connection. *Id.* Thus, *Rousey* assumes that a noncompliant claimant who is otherwise disabled may still be denied DIB under Section 404.1530 if following the prescribed treatment would alleviate the claimant's disability. *See id.* at 1070.

Here, apparently conducting a *Rousey* analysis, the ALJ accepted the claimant's statement she is doing well with managing her diabetes, and then concluded "she currently has no problem with diabetes." [DE 12 at 29]. However, the ALJ then found that the claimant was "historically noncompliant with her diabetes treatment." [*Id.* at 30]. Either Ms. G. is compliant and is not experiencing symptoms related to diabetes, or she is noncompliant and is not properly controlling her diabetic condition. While a finding that Ms. G. was noncompliant with her treatment regimen may have been supported by the claimant's treatment records, the two findings appear inconsistent. It is difficult—if not impossible—for this Court to follow the logical bridge created by the ALJ when his findings are internally inconsistent.

Furthermore, the Seventh Circuit has held that an ALJ, when assessing a claimant who is emotionally unreliable due to episodic and fluctuating affect even when medically treated, should consider whether the claimant's "mental-residual-functional-capacity [evidence] was consistent with . . . treatment notes as a whole." *Punzio v. Astrue*, 630 F.3d 704, 710–11 (7th Cir. 2011) ("a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition").

Here, Ms. G. has been diagnosed with an intellectual disability as well as physical disease, and like a person with mental illness, she experiences some days that are better than others. The vocational expert testified that an "individual [who] consistently misses more than one day a month . . . would not be able to maintain competitive employment." [DE 12 at 76]. The ALJ did not adequately factor this aspect into his analysis. After all, the Seventh Circuit has noted that

> [e]ven in a case in which the applicant's medical condition does not meet the requirements for a listed impairment, it may be apparent to medical experts that the patient has a physical or mental condition that prevents him from performing on a full-time basis any jobs having particular requirements; as long the medical experts understand those requirements, they may report or testify that the patient is unable to perform those jobs.

*Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). There might be a logical bridge, but the ALJ did not build one here.

As this matter is being remanded on other grounds, the ALJ should also consider any possible alternative explanations for any noncompliance with medication prescriptions by Ms. G. before drawing an adverse inference. Likewise, the ALJ should

consider—in greater detail—whether Ms. G. now suffers from a combination of conditions that renders her unemployable.[5] In other words, the ALJ must take a wholistic approach to Ms. G.'s residual functional capacity upon remand and build a logical bridge between the disparate pieces of evidence.

### D.     Weight Given to Opinion Evidence

Lastly, Ms. G. asserts that the ALJ erred in making his RFC determination because he did not afford the proper weight to the opinion of the consultative examiner ("CE"), Dr. Boen, Ph.D., who is the psychologist selected by the agency to examine Ms. G. Specifically, Ms. G. contends that the ALJ failed to articulate good reasons for discounting the CE's professional mental health opinion, and gave inordinate weight to a non-examining consultant ("NEC").

With respect to Dr. Boen's opinion, the ALJ gave it "significant weight." [DE 12 at 32]. Specifically, Dr. Boen's consultative psychological examination found that while Ms. G. can understand what she might be asked to do on a job, she "would have trouble remembering what she was asked to do on a job, would have trouble being able to concentrate on the job, [and] would have trouble being able to stay on task . . . ." [*Id.*]. The State agency's psychologist, Dr. Gange, who only reviewed Ms. G.'s records, similarly found that she would have trouble remembering, concentrating, and stay on task, as well as being easily distracted before ultimately opining that Ms. G. was not disabled. The ALJ gave "great weight" to Dr. Gange's NEC opinion. [*Id.*].

---

[5] While Social Security disability benefits are not an unemployment program, the "medical (disability) question and the economic (vocational) question are not readily separable." *Bauer,* 532 F.3d at 609.

18

Contrary to the Commissioner's arguments, this apparent discounting of Dr. Boen's opinion as an examining psychologist received very little discussion. Moreover, the ALJ failed to explain why he relied more heavily upon Dr. Gange's opinions as a non-examining agency psychologist. Except for the ALJ's generalized and boilerplate suggestion that it was "supported by the totality of the evidence," it is unclear why the ALJ gave significant weight to Dr. Boen's opinions, while giving great weight to Dr. Gange's opinions. ALJs should give more weight to the medical opinion of a source who examines a claimant than to the medical opinion of a source who has not examined the claimant. 20 C.F.R. § 404.1527(c)(1). Yet still, the ALJ discounted the examination-based opinions of Dr. Boen in favor of the non-examining opinions of Dr. Gange without adequate explanation. As noted by the Seventh Circuit, "an agency doctor [is] unlikely . . . to exaggerate an applicant's disability." *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013). Nevertheless, the ALJ should have taken greater pains to explain why one agency doctor was given great weight and another was given only significant weight.

More specifically, the ALJ did not discuss—and may not have considered—the relevance of Dr. Boen's opinion based on his assignment of an overall WAIS-IV[6] score of 70 to Ms. G. Based on his review of the WAIS-IV test results, Dr. Boen determined that Ms. G.'s "general cognitive ability is within the borderline range of intellectual functioning… [and] [h]er overall thinking and reasoning abilities exceed those of only

---

[6] Wechsler Adult Intelligence Scale, Fourth Edition.

approximately 2% of individuals her age." [DE 12 at 1319]. The ALJ neither discussed this evidence in making his determination that Ms. G. maintained an RFC to work nor constructed a logical bridge that included this evidence. Without an explanation for favoring the opinions of non-examining agency psychologist over the opinions of the agency-selected consultative examining psychologist, the ALJ has not supported his RFC determination with substantial evidence and warrants remand to ensure complete consideration of the medical opinion evidence in the RFC analysis.

## V. CONCLUSION

As discussed above, the ALJ did not support his disability determination with substantial evidence. Accordingly, the undersigned **RECOMMENDS** that Ms. G.'s appeal of the Social Security Administration's decision denying her application for Disability Insurance Benefits and Supplemental Security Income be **GRANTED** and that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings consistent with this report and recommendation.

> **NOTICE IS HEREBY GIVEN** that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). **FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**.
>
> **SO ORDERED** this 21st day of February 2020.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
